RUTHER, APPELLEE, *v*. KAISER ET AL., APPELLANTS.

[Cite as *Ruther v. Kaiser*, **134 Ohio St.3d 408, 2012-Ohio-5686.**]

*Medical-malpractice actions—Statutes of repose—The medical-malpractice statute of repose found in R.C. 2305.113(C) does not extinguish a vested right and thus does not violate the Ohio Constitution, Article I, Section 16—Judgment reversed.*

(No. 2011-0899—Submitted April 25, 2012—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Warren County,

No. CA2010-07-066, 2011-Ohio-1723.

_____

**SYLLABUS OF THE COURT**

The medical-malpractice statute of repose found in R.C. 2305.113(C) does not extinguish a vested right and thus does not violate the Ohio Constitution, Article I, Section 16. (*Hardy v. VerMeulen,* 32 Ohio St.3d 45, 512 N.E.2d 626 (1987), overruled.)

_____

**LANZINGER, J.**

{¶ 1} This appeal is an as-applied constitutional challenge to R.C. 2305.113(C), the statute of repose for medical claims. The Twelfth District Court of Appeals held that R.C. 2305.113(C), as applied to the facts of this case, violates the right-to-remedy clause of the Ohio Constitution, Article I, Section 16, relying in part upon *Hardy v. VerMeulen*, 32 Ohio St.3d 45, 47, 512 N.E.2d 626 (1987). For reasons that follow, we overrule *Hardy* and reverse the judgment of the Twelfth District Court of Appeals.

## I. Background

{¶ 2}   R.C. 2305.113(C) sets a four-year statute of repose for medical-malpractice claims.[1]   Except for minors or those of unsound mind, a person must file a medical claim no later than four years after the alleged act of malpractice occurs or the claim will be barred.   Limited exceptions also exist for malpractice discovered during the fourth year after treatment and for malpractice that leaves a foreign object in a patient's body.   R.C. 2305.113(D)(1) and (2).   Those exceptions allow one additional year after discovery of an injury to file suit.   *Id.*

{¶ 3}   This case involves a medical-malpractice claim filed well after the statute of repose set forth in R.C. 2305.113(C), and no statutory exception applies. Timothy Ruther developed abdominal pains that led to a diagnosis of a liver lesion and hepatitis C in December 2008.

{¶ 4}   Around this time, Timothy Ruther's wife, appellee Tracy Ruther, reviewed medical records detailing appellant Dr. George Kaiser's care of her husband.   These records showed elevated liver-enzyme levels in July 1995, May 1997, and October 1998.   Although the parties contest the length of time Mr. Ruther received treatment at Dr. Kaiser's practice, appellant Warren County Family Practice Physicians, Inc., it is not disputed that Dr. Kaiser stopped treating Mr. Ruther years before he complained of abdominal pain.

---

1.  R.C. 2305.113(C) provides:

> Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:

> (1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

> (2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

{¶ 5} In May 2009, the Ruthers sued Dr. Kaiser and Warren County Family Practice Physicians, Inc., for medical malpractice. The Ruthers claimed that Dr. Kaiser had failed "to properly assess, evaluate and respond to abnormal laboratory results including, but not limited to, very high liver enzymes." Mr. Ruther died while the case was pending. Mrs. Ruther then amended the complaint to add a claim for wrongful death and sought a declaratory judgment that R.C. 2305.113(C), as applied to her husband, violates the United States and Ohio constitutions.

{¶ 6} Dr. Kaiser and the medical practice moved for summary judgment, asserting that the statute of repose found in R.C. 2305.113(C) barred the amended complaint, having been brought more than ten years after the alleged act of malpractice. The trial court, however, denied the motion, concluding that applying the statute of repose in this case would violate the Ohio Constitution, Article 16, Section 1. The trial court also denied appellants' motion for summary judgment with respect to Mrs. Ruther's wrongful-death claim because it had been filed within the statute of limitations. That ruling was not appealed. Thus, the wrongful-death action is not before us.

{¶ 7} The Twelfth District Court of Appeals affirmed the trial court's denial of summary judgment. *Ruther v. Kaiser*, 12th Dist. No. CA2010-07-066, 2011-Ohio-1723. Like the trial court, the appellate court concluded that the statute, as applied to Mrs. Ruther's medical-malpractice claim, "bars her claim after it had already vested, but before she or the decedent knew or reasonably could have known about the claim[,] [thereby constituting] a violation of the right-to-a-remedy provision of Section 16, Article I of the Ohio Constitution." Id. at ¶ 38.

{¶ 8} We granted Dr. Kaiser's request for discretionary review. *Ruther v. Kaiser*, 129 Ohio St.3d 1474, 2011-Ohio-4751, 953 N.E.2d 841. The sole proposition of law reads: "The medical malpractice statute contained in O.R.C.

§2305.113(C) does not violate the open courts provision (Section 16, Article I) and is therefore constitutional."

## II. Analysis

### A. The Statute Is Presumed to Be Constitutional

{¶ 9} R.C. 2305.113(C) has a strong presumption of constitutionality. *Arbino v. Johnson & Johnson*, 116 Ohio St. 3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25. An as-applied constitutional challenge, such as Mrs. Ruther raises, alleges that

> the application of the statute in the particular context would be unconstitutional. "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative."

*Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting). The standard for such a challenge is clear and convincing evidence. *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21. "The only judicial inquiry into the constitutionality of a statute involves the question of legislative power, not legislative wisdom." *State ex rel. Bowman v. Allen Cty. Bd. of Commrs.*, 124 Ohio St. 174, 196, 177 N.E. 271 (1931).

### 1. Right to Remedy

{¶ 10} The constitutional provision at issue in this case, Ohio Constitution, Article I, Section 16, guarantees that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." This one provision contains many important

constitutional principles—"open courts," "right to remedy," and "due course of law."

{¶ 11} In this case, we are concerned with the right to remedy, which has been a part of our constitution since Ohio was admitted to the union. Little is known about the intent behind its inclusion, as the records of the 1802 convention indicate that the original right-to-remedy provision, Ohio Constitution of 1802, Article VIII, Section 7, was enacted without amendment or recorded discussion. *See E.W. Scripps Co. v. Fulton*, 100 Ohio App. 157, 171-172, 125 N.E.2d 896 (8th Dist.1955) (Hurd, J., concurring). Although it was almost deleted at the 1850-1851 convention, this section was ultimately carried unchanged into the current Bill of Rights. *Id.* at 172. The 1873-1874 constitutional convention made no changes in this section, and the 1912 convention also left the words of the 1802 drafters unaltered, though it added a sentence not at issue in the instant case. *Id.*

{¶ 12} A plain reading of Article I, Section 16 reveals that it does not provide for remedies without limitation or for any perceived injury. Rather, the right-to-remedy clause provides that the court shall be open for those to seek remedy "by *due course of law*." (Emphasis added.) Article I, Section 16 does not prevent the General Assembly from defining a cause of action.

{¶ 13} We have previously stated that the right-to-remedy provision applies only to existing, vested rights and that the legislature determines what injuries are recognized and what remedies are available. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 150, quoting *Sedar v. Knowlton Constr. Co.*, 49 Ohio St.3d 193, 202, 551 N.E.2d 938 (1990). "No one has a vested right in rules of the common law. * * * The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to new circumstances." *Fassig v. State ex rel. Turner*, 95 Ohio St. 232, 248, 116 N.E. 104 (1917), *overruled on other grounds by Griffin v. Hydra-Matic Div., Gen. Motors Corp.,* 39 Ohio St.3d 79, 529 N.E.2d 436 (1988), syllabus.

{¶ 14} Thus, the General Assembly has the right to determine what causes of action the law will recognize and to alter the common law by abolishing the action, by defining the action, or by placing a time limit after which an injury is no longer a legal injury. For example, the General Assembly abolished the torts of breach of a promise to marry, alienation of affections, and criminal conversation. R.C. 2305.29; *Strock v. Pressnell*, 38 Ohio St.3d 207, 214, 527 N.E.2d 1235 (1988), and paragraph one of the syllabus (upholding the statute that abolished "amatory actions" as constitutional). The legislature has also redefined the common-law definition of employer intentional torts. R.C. 2745.01; *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066. It has also limited the ability to pursue negligence actions that are discovered six months after a decedent's death. R.C. 2117.06(C).

{¶ 15} The question remains whether R.C. 2305.113(C) is a valid exercise of the General Assembly's authority to define or limit a cause of action.

2. No Extinguishment of Vested Right

{¶ 16} The Twelfth District Court of Appeals declared R.C. 2305.11(C) unconstitutional as applied, reasoning that the statute extinguishes the right to remedy for a vested claim, relying in a large part on *Hardy*, 32 Ohio St.3d at 47, 512 N.E.2d 626. *Ruther*, 12th Dist. No. CA2010-07-066, 2011-Ohio-1723, ¶ 38. The error in *Hardy*, repeated by the appellate court, is that there is no actual examination of when a medical-malpractice claim vests. *Hardy* mistakenly appears to conclude that a medical-malpractice claim arises (becomes "actionable") immediately upon the breach of the standard of care—i.e., the negligent act or omission. And yet a cause of action for negligence does not arise until there is "the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶ 17} To be actionable, then, the claim for medical negligence requires an injury. We have clearly stated that it is when a patient discovers or in the

6

exercise of reasonable care and diligence should have discovered the resulting injury that a cause of action for medical malpractice accrues, or, in other words, vests. *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 449 N.E.2d 438 (1983); *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1, 516 N.E.2d 204 (1987), syllabus. If indeed an action immediately accrues upon a negligent act or omission, then the one-year statute of limitations for filing all medical-malpractice claims would begin to run immediately.

{¶ 18} But the General Assembly recognized in R.C. 2305.113 that in some cases, an injury may not manifest itself within one year of a breach of a duty of care and so has provided the general discovery period of four years. Within that boundary, when the patient discovers or should have discovered the injury, or when the relationship with the doctor terminates, whichever is later, the one-year statute of limitations begins to run. R.C. 2305.113(C) does not bar a vested cause of action, but prevents a cause of action from vesting more than four years after the breach of the duty of care. Therefore, it is a true statute of repose.

3. Rational Basis for R.C. 2305.113(C)

{¶ 19} Many policy reasons support this legislation. Just as a plaintiff is entitled to a meaningful time and opportunity to pursue a claim, a defendant is entitled to a reasonable time after which he or she can be assured that a defense will not have to be mounted for actions occurring years before. The statute of repose exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation.

{¶ 20} Forcing medical providers to defend against medical claims that occurred 10, 20, or 50 years before presents a host of litigation concerns, including the risk that evidence is unavailable through the death or unknown whereabouts of witnesses, the possibility that pertinent documents were not retained, the likelihood that evidence would be untrustworthy due to faded memories, the potential that technology may have changed to create a different

and more stringent standard of care not applicable to the earlier time, the risk that the medical providers' financial circumstances may have changed—i.e., that practitioners have retired and no longer carry liability insurance, the possibility that a practitioner's insurer has become insolvent, and the risk that the institutional medical provider may have closed.

{¶ 21} Responding to these concerns, the General Assembly made a policy decision to grant Ohio medical providers the right to be free from litigation based on alleged acts of medical negligence occurring outside a specified time period. This decision is embodied in Ohio's four-year statute of repose for medical negligence, set forth in R.C. 2305.113(C). The statute establishes a period beyond which medical claims may not be brought even if the injury giving rise to the claim does not accrue because it is undiscovered until after the period has ended.

**B**. *Hardy* **Should Be Overruled**

{¶ 22} Ruther urges that *Hardy* is binding precedent and that there is no justification for departing from that precedent. However, a newly enacted statute warrants a fresh review on its individual merits. *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 24. We are also persuaded that *Hardy* should be overruled when we examine it under the stringent standard set forth in *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus:

> A prior decision of the Supreme Court may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it.

1.    Considering whether *Hardy* was wrongly decided and whether circumstances have changed

{¶ 23} *Hardy* rests on a flawed foundation—it ignored the cases that establish when a medical claim vests.  The *Hardy* court concluded that an earlier version of the statute of repose violated the open-courts provision of the Ohio Constitution by denying "legal remedy to one who has suffered bodily injury."  32 Ohio St.3d at 48, 512 N.E.2d 626.  Without any analysis, the court assumed that the right to a remedy attached to an unaccrued claim, holding that because a plaintiff did not become aware of an injury until after the four-year statute of repose period had expired, "his cause of action was extinguished before he could act upon it."  *Id.* at 45-46.  There was no detailed discussion of when a medical claim arises, accrues, vests, or is actionable.

{¶ 24} We have acknowledged that "it is state law which determines what injuries are recognized and what remedies are available."  *Groch*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, at ¶ 150.  Although *Groch* repeated without any analysis *Hardy*'s statement of when a medical claim accrues, *Groch* departed from precedent by holding that it is not unconstitutional for a statute of repose to bar a claim that does not vest until after the period provided by the statute of repose has expired.  If a statute takes away a claim before it accrues, the claim never vests, and the statute of repose does not violate the open-courts provision of Article I, Section 16.  " 'The right-to-a-remedy provision of Section 16, Article I applies *only to existing, vested rights*, and it is state law which determines what injuries are recognized and what remedies are available.' "  (Emphasis added.) *Id.*, quoting *Sedar*, 49 Ohio St.3d at 202, 551 N.E.2d 938.

{¶ 25} For purposes of the statute of limitations, this court has recognized that a medical claim accrues upon the later of the termination of the doctor-patient relationship or the discovery of the injury.  *Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987), paragraph one of the syllabus.  If there is no discovery of any injury, the claim has not accrued.  Nor has it vested.

**{¶ 26}** Justice Wright and two other dissenters understood this point when examining the General Assembly's ability to define time periods for causes of action:

> Is an undiscovered claim for damages a constitutional right inviolate against legislative limitation as to time constraints? Does Section 16, Article I forever provide a remedy to an as yet undiscovered claim? To suggest, as does the majority, that every commonlaw [sic] right is indelibly embedded in the Ohio Constitution and that subjective awareness of a potential legal claim is required prior to the abolishment of a cause of action is sheer legal fiction. Nevertheless, because the majority disagrees with the time constraints under [the statute], it has, under the guise of judicial interpretation, abrogated the function of the General Assembly and the electorate by amending the Constitution of Ohio by judicial fiat.

*Hardy,* 32 Ohio St.3d at 55, 512 N.E.2d 626 (Wright, J., concurring in judgment only and dissenting in part). We agree with Justice Wright's analysis in *Hardy* and hold that the case was wrongly decided. The General Assembly has the right to define the contours of a cause of action.

**{¶ 27}** Circumstances have also changed since *Hardy*, for the General Assembly addressed certain constitutional concerns when enacting R.C. 2305.113(C) in 2003. 149 Ohio Laws, Part II, 3791, 3799-3804. Just as in 1987, when *Hardy* was decided under former R.C. 2305.11(A), 141 Ohio Laws, Part II, 3223, 3228, "an action upon a medical claim * * * shall be commenced within one year after the cause of action *accrued.*" (Emphasis added.) R.C. 2305.113(A). And in addition, no action upon a medical claim shall be *commenced* "more than four years after the *occurrence* of the act or omission

10

constituting the alleged basis" of the medical claim. (Emphasis added.) R.C. 2305.113(C). But now, unlike under the statute addressed in *Hardy*, the statute of repose will not apply to persons within the age of minority or to those of unsound mind. *Id. See* 141 Ohio Laws, Part II, at 3229. Those who discover the injury in the fourth year after the alleged negligent act or omission have an additional year to file suit, R.C. 2305.113(D)(1), and those with a foreign object left in their bodies have one year to sue from the time that a person exercising reasonable care and diligence should have discovered it. R.C. 2305.113(D)(2).

{¶ 28} Thus, a prospective plaintiff in an action for medical negligence is typically granted one year to pursue a claim from the time it accrues, provided that the accrual itself happens within four years. The statute of repose grants a prospective plaintiff to whom it applies four years to discover a claim and one year to commence that action, or it is barred before it arises. Although in some cases, discovery of an injury will not occur within the time frame chosen, the General Assembly has struck a rational balance between the rights of prospective claimants to pursue their allegations and the rights of prospective defendants to have protection from stale litigation. This court should not substitute its judgment for that legislative choice.

2. Considering practical workability

{¶ 29} For the reasons expressed earlier, if the General Assembly cannot legislate a statute of repose, medical providers are left with the possibility of unlimited liability indefinitely. We explained in *Groch* that statutes of repose are not constitutionally infirm. We have also held that only accrued causes of action are vested, substantive rights. *Gregory v. Flowers*, 32 Ohio St.2d 48, 58, 290 N.E.2d 181 (1972). To hold that a party has a property right in unaccrued claims means that the General Assembly may never make a change in common-law causes of action such as medical negligence.

3. Considering reliance interests

**{¶ 30}** The final test in *Galatis* is whether undue hardship would be visited upon those who have relied on *Hardy*. We must ask " 'whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations.' " *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 58, quoting *Robinson v. Detroit*, 462 Mich. 439, 613 N.W.2d 307 (2000). To the contrary, readjustment and dislocation will occur in upholding *Hardy*, and no reliance interest will be jeopardized by overruling it. The current statute of repose has been in effect since 2003, and it is less likely that people who are injured due to a medical provider's breach of duty will not discover injury proximately caused by that act or omission before the statute of repose bars the claim from vesting. The General Assembly has chosen up to four years for the cause of action to arise (to be discovered). If one is not aware of a cause of action, one cannot rely on a case that stated it would never be barred after passage of time. Thus, there would be no undue hardship created if *Hardy* were overruled.

**{¶ 31}** As noted above, *Hardy* did not properly analyze when the vesting of a medical cause of action occurs. It ignored cases stating that this type of claim accrues upon discovery of an injury and thus that an undiscovered claim does not vest. The interplay between the statute of limitations and the statute of repose is important. Otherwise, the plaintiff would be required to file suit within one year of the occurrence of the breach of the medical standard of care.

### C. Upholding the Statute of Repose Is Consistent with the Majority View

**{¶ 32}** The Supreme Court of Wisconsin faced a similar right-to-remedy challenge to its statute of repose. The medical claim involved a child whose congenital condition that later caused blindness was discovered sometime after her tenth birthday. A lawsuit on her behalf was filed three years later against the doctor who had treated her as a newborn. The Wisconsin statutes of limitations

and repose granted one year from discovery to file suit, as long as five years had not passed since the act or omission that was the basis of the claim, or until the minor's tenth birthday. The court recognized that some claims would be foreclosed before a plaintiff had an opportunity to know that an injury occurred, stating:

> [T]he legislature may sever a person's claim by a statute of limitations or a statute of repose when the person has had no possibility of discovering the injury—when the person has been blameless in every respect. These decisions represent judicial deference to the stated policy of the legislature. Protecting the interests of those who must defend claims based on old acts or omissions is a policy concern that legislative bodies have weighed for centuries.

*Aicher v. Wisconsin Patients Comp. Fund,* 237 Wis.2d 99, 2000 WI 98, 613 N.W.2d 849, ¶ 50. The court concluded:

> We find [the statutes of limitations and repose] constitutional, despite the harsh results they yield in this case. We hold that [the statutes] do not violate the right-to-remedy clause because a prospective claimant does not have a legislative right to pursue a medical malpractice action if the injury is discovered after the statutory time limitation period elapses.

*Id*. at ¶ 85.

{¶ 33} *Aicher* is not the only opinion analyzing a statute of repose for medical claims in this way. Thirty-two states have such statutes in existence. *See* Robin Miller, Validity of Medical Malpractice Statutes of Repose, 5 A.L.R.6th

13

133 (2011). And of that number, at least 16 statutes of repose have been upheld as constitutional against challenges similar to that of the open-courts or right-to-remedy provisions. *Id.* at 9-11.[2] To the contrary, Mrs. Ruther cites three cases, only one of which directly addresses the right to remedy. *McCollum v. Sisters of Charity of Nazareth Health Corp.,* 799 S.W.2d 15, 19 (Ky.1990). The statutes from Arizona and Colorado were struck down on equal-protection provisions of those state constitutions. *Kenyon v. Hammer*, 142 Ariz. 69, 87, 688 P.2d 961 (1984); *Austin v. Litvak*, 682 P.2d 41, 52 (Colo.1984). Interestingly, one of the cases that *Hardy* relied upon was overruled by the Supreme Court of South Dakota. *See Cleveland v. Lead*, 2003 SD 54, 663 N.W.2d 212, ¶ 45, overruling *Daugaard v. Baltic Co-op. Bldg. Supply Assn.*, 349 N.W.2d 419 (S.D.1984). That supreme court stated, "[I]f ten years is violative of 'open courts' constitutional protection, what about 20 years, 50 years or 100 years or 'any longer length of time into perpetuity'?" *Id.* at ¶ 44, quoting *Green v. Siegel, Barnett & Schutz*, 1996 SD 146, 557 N.W.2d 396, ¶ 28.

**{¶ 34}** Continuing to follow *Hardy* would place Ohio in a distinct minority position.

### III. Conclusion

**{¶ 35}** A plaintiff like Mrs. Ruther, whose cause of action for medical malpractice does not accrue until after the statute of repose has expired pursuant to R.C. 2305.113(C), is not deprived of a vested right. Because R.C. 2305.113(C) is a valid exercise of the General Assembly's authority to limit a cause of action, Mrs. Ruther failed to present clear and convincing evidence that the statute is

---

2. *See, e.g., Christiansen v. Providence Health Sys. of Or. Corp.*, 344 Or. 445, 449-456, 184 P.3d 1121 (2008) (statute of ultimate repose in medical-negligence action against hospital and obstetrician did not violate constitutional right-to-a-remedy clause); *Choroszy v. Tso*, 647 A.2d 803, 807 (Me.1994) (upholding three-year medical-malpractice statute of repose against open-courts challenge, finding that "although we recognize that the three-year period of repose may cause some hardship for the [plaintiffs], that hardship was contemplated by the Legislature when it made its policy choice"); *Stein v. Katz*, 213 Conn. 282, 286, 567 A.2d 1183 (1989) (application of the three-year medical-malpractice statute of repose did not violate the "open courts" provision of the Connecticut constitution); *Mega v. Holy Cross Hosp.*, 111 Ill.2d 416, 422-423, 95 Ill.Dec. 812, 490 N.E.2d 665 (1986) (the repose provision may, in a particular instance, bar an action before it is discovered).

unconstitutional as applied to her claim. We therefore hold that the medical-malpractice statute of repose found in R.C. 2305.113(C) does not extinguish a vested right and thus does not violate the Ohio Constitution, Article I, Section 16. *Hardy v. VerMeulen,* 32 Ohio St.3d 45, 512 N.E.2d 626, is overruled.

Judgment reversed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

_____

**MCGEE BROWN, J., concurring.**

**{¶ 36}** I concur. This is an as-applied constitutional challenge to Ohio's statute of repose. The facts of this case are tragic, and our decision today leaves an alleged injured party with no opportunity to pursue her claim of medical negligence. However, it is unquestionably the province of the legislature to define claims and remedies under Ohio law. In this case, the General Assembly has determined that four years from the date of the alleged negligence is the appropriate timeframe in which to file a medical-malpractice claim. R.C. 2305.113(C). We cannot substitute our judgment for that of the legislature.

**{¶ 37}** More importantly, this court has firmly established that the right-to-remedy clause found in Article I, Section 16 of the Ohio Constitution does not bar the application of statutes of repose to undiscovered negligence. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 149. The plain language of R.C. 2305.113(C) eliminates a claim for medical malpractice after four years, except in limited circumstances. As the majority points out, Article I, Section 16 of the Ohio Constitution protects remedies, not claims. Therefore, the right-to-remedy clause simply does not apply.

**{¶ 38}** Belated discovery of medical negligence is a frightening proposition for anyone who has been injured by a medical professional. However, the legislature is required to balance the needs of medical professionals,

15

who need some finality to potential litigation, with the unusual circumstance of belatedly discovered negligence. To the extent that the four-year time limit in Ohio's statute of repose is seen as harsh, the remedy is in the legislature, not the courts. The people are responsible for their political choices. *See Natl. Fedn. of Indep. Business v. Sebelius*, __ U.S. __, 132 S. Ct. 2566, 2579, 183 L. Ed. 2d 450 (2012) ("policy judgments * * * are entrusted to our Nation's elected leaders, who can be thrown out of office if the people disagree with them. It is not our job to protect the people from the consequences of their political choices").

{¶ 39} The Ohio Constitution permits the General Assembly to ensure some degree of finality for prospective negligence claims. It is not for this court to determine where the legislature should draw that line. Accordingly, I concur.

_____

**PFEIFER, J., dissenting.**

{¶ 40} Early in law school, every student is introduced to the rich historical tradition and critical importance of the common law in our nation's development. Today, American judges and attorneys are invited to assist both developed and developing countries in applying our common-law traditions, which date back centuries in England, to their efforts in empowering their courts to protect basic and constitutional human rights without interference from political leaders and legislative bodies or their military establishment. The power of every citizen in the United States to seek redress in our open courts for injury done, be it by our government, another citizen, or a large corporation, is a source of some amazement and great envy in many parts of the world. That the resulting decisions by judges and juries are respected and enforced without police or military intervention is incomprehensible in some quarters. Protecting our citizens' individual fundamental constitutional rights from attack by the government is the proud duty of the American judiciary and a part of our oath.

{¶ 41} The case of *Ruther v. Kaiser*, rolled out amidst a blizzard of announcements by this court, will be of little immediate notice, except to the

16

parties, the medical community, and a small, specialized element of the bar. Over time, however, *Ruther* will come to be known for the profound damage done to every Ohio citizen's constitutional right to remedy in open court for an injury done him in his land, goods, person, or reputation. Ohio Constitution, Article I, Section 16.

{¶ 42} The sweeping language employed by the majority in this case is the crescendo in our court's decade-long deference to, and acceptance of, the General Assembly's assault on our citizens' right to remedy set forth, without alteration, for over two centuries in the Ohio Constitution.

{¶ 43} When is a fundamental right, contained in the Ohio Constitution and Bill of Rights since 1802, no longer the individual right of an Ohio citizen? According to this court, whenever the Ohio General Assembly chooses to extinguish the right, it will no longer exist, period. The majority writes:

> A plain reading of Article I Section 16 reveals that it does not provide for remedies without limitation or for any perceived injury. Rather, the right-to-remedy clause provides that the court shall be open for those to seek remedy "by *due course of law*." (Emphasis added.) Article I, Section 16 does not prevent the General Assembly from defining a cause of action.

Majority opinion, ¶ 12. In case the reader did not understand the breadth of the majority's devastating proclamation, it continues: "Thus, the General Assembly has the right to determine what causes of action the law will recognize and to alter the common law by abolishing the action, by defining the action, or by placing a time limit after which an injury is no longer a legal injury." Majority opinion, ¶ 14.

{¶ 44} Under *Ruther*, we now fully abdicate our solemn duty to enforce and protect constitutional rights afforded citizens since the beginning of

statehood. If the General Assembly abolishes a remedy, including those recognized at common law when the constitution was written, it is now clearly within its power. We will afford "great deference" in presuming constitutionality of any act of the General Assembly limiting or abolishing a cause of action.

{¶ 45} Continued erosion of the venerable right of every citizen to a remedy in open court for injury done will inevitably flow from the General Assembly. It may come in small drips or in tidal waves, but it will come. The economic interests pushing limitations on causes of action are just too powerful and too seductive for the General Assembly to resist. We have now removed the Assembly's only dam against the onslaught: this court's previous vigorous enforcement of the "right to remedy" constitutional protections.

{¶ 46} When Timothy and Tracy Ruther sought a remedy in open court for injuries suffered because of a doctor's failure to properly respond to three elevated liver-enzyme tests taken more than a decade before Timothy developed a fatal liver lesion and hepatitis C, they could never have envisioned the damage their case would ultimately cause for generations of Ohioans yet to be injured. Their personal tragedy has evolved into a undiscovered nightmare for legions of Ohioans who will find the courthouse doors barred for the presentation of their future legitimate injury claims.

{¶ 47} I dissent.

————————————

Santen & Hughes, John Holschuh, Brian O'Connor, and Sarah Tankersley, for appellee.

Arnold Todaro & Welch Co., L.P.A., John Welch, and Karen Clouse, for appellants.

Bricker & Eckler L.L.P., Anne Marie Sferra, and Bridget Purdue Riddell, urging reversal for amici curiae American Hospital Association, American Medical Association, American Osteopathic Association, Ohio Alliance for Civil

Justice, Ohio Hospital Association, Ohio Osteopathic Association, and Ohio State Medical Association.

Tucker Ellis and Susan Audey, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Michael DeWine, Attorney General, Alexandra Schimmer, Solicitor General, and Michael Hendershot, Chief Deputy Solicitor, urging reversal for amicus curiae state of Ohio.

Paul W. Flowers Co., L.P.A., and Paul Flowers, urging affirmance for amicus curiae Ohio Association for Justice.

_____