[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Natl. Prescription Opiate Litigation*, Slip Opinion No. 2024-Ohio-5744.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5744

IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION;

TRUMBULL COUNTY, OHIO ET AL. *v*. PURDUE PHARMA, L.P., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Natl. Prescription Opiate Litigation*, Slip Opinion No. 2024-Ohio-5744.]**

*Torts—Products liability—Public nuisance—Ohio Product Liability Act, R.C. 2307.71 et seq.—All common-law public-nuisance claims arising from the sale of a product have been abrogated by Ohio Product Liability Act— Certified question of state law answered in the affirmative.*

(No. 2023-1155—Submitted March 26, 2024—Decided December 10, 2024.)

CERTIFIED QUESTION from the U.S. Court of Appeals for the Sixth Circuit, Nos. 22-3750, 22-3751, 22-3753, 22-3841, and 22-3844.

_____

DETERS, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE and BRUNNER, JJ., joined. FISCHER, J., concurred in judgment only.

STEWART, J., concurred in part and dissented in part, with an opinion joined by DONNELLY, J.

**DETERS, J.**

{¶ 1} We accepted review of a certified question of state law from the United States Court of Appeals for the Sixth Circuit regarding whether R.C. 2307.71 abrogates a common-law claim of absolute public nuisance resulting from the sale of a product. For the reasons that follow, we answer the certified question in the affirmative and hold that all common-law public-nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act, R.C. 2307.71 et seq. ("OPLA").

## I. BACKGROUND

{¶ 2} The Sixth Circuit Court of Appeals provided the following facts and allegations from which the certified question of state law arises. A group of city and county governments from across the nation, Indian tribes, and other entities have brought actions alleging "that opioid manufacturers, opioid distributors, and opioid-selling pharmacies and retailers acted in concert to mislead medical professionals into prescribing, and millions of Americans into taking and often becoming addicted to, opiates." *In re Natl. Prescription Opiate Litigation*, 976 F.3d 664, 667 (6th Cir. 2020). Collectively, these actions make up the multidistrict National Prescription Opiate Litigation pending in the United States District Court for the Northern District of Ohio. One of these actions—brought by two northeast Ohio counties—gave rise to this certified question of state law.

{¶ 3} Plaintiffs Trumbull County and Lake County (collectively, the "Counties") allege that national pharmaceutical chains, including defendants Walgreens, CVS, and Walmart (collectively, the "Pharmacies"), "'created, perpetuated, and maintained' the opioid epidemic by filling prescriptions for

opioids without controls in place to stop the distribution of those that were illicitly prescribed."

{¶ 4} The Counties pleaded their allegations as a common-law absolute public-nuisance claim, which this court has defined as "'an unreasonable interference with a right common to the general public,' " *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 8, quoting 4 Restatement of the Law 2d, Torts, § 821B(1), 87 (1979), that "is based on either intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken," *State ex rel. R.T.G., Inc. v. State*, 2002-Ohio-6716, ¶ 59. Invoking the OPLA, the Pharmacies filed a motion to dismiss. The OPLA is, as the name suggests, a statutory scheme governing product-liability claims. *See* R.C. 2307.71 et seq. Relevant here, the OPLA is "intended to abrogate all common law product-liability claims or causes of action." R.C. 2307.71(B). The Pharmacies argued that the OPLA abrogates public-nuisance claims like those brought by the Counties, arguing in part that certain public-nuisance claims are included in the OPLA's definition of product-liability claims. *See* R.C. 2307.71(A)(13).

{¶ 5} The federal district court denied the Pharmacies' motion to dismiss. It did so based on its prior decision in a separate action within the same multidistrict litigation brought by Summit County, Ohio (the "Summit County Action"), *see In re Natl. Prescription Opiate Litigation*, 2018 WL 6628898, *12-15 (N.D. Ohio Dec. 19, 2018), determining that it would not reconsider its prior rulings at that time. In the Summit County Action, the federal district court concluded that the OPLA does not abrogate absolute public-nuisance claims seeking relief for harm other than compensatory damages (e.g. equitable remedies). Legislative history heavily influenced the federal district court's decision. In particular, the district court considered legislative history surrounding two amendments to the OPLA: the first in 2005 (the "2005 Amendment"), and the second in 2007 (the "2007 Amendment").

**{¶ 6}** The 2005 Amendment added R.C. 2307.71(B), which is the subsection abrogating all common-law product-liability claims. Am.Sub.S.B. No. 80, 150 Ohio Laws, 7915. The legislative history expressed the General Assembly's intent "to supersede the holding of the Ohio Supreme Court in *Carrel v. Allied Products Corp.* (1997), 78 Ohio St.3d 284, that the common law product-liability cause of action of negligent design survives the enactment of [the OPLA] . . . , and to abrogate all common law product liability causes of action." Am.Sub.S.B. No. 80, Section 3, 150 Ohio Laws, 7915, 8031. But despite expressing a desire to supersede *Carrel*, the legislative history made no mention of our decision in *LaPuma v. Collinwood Concrete*, 1996-Ohio-305, ¶ 10 (holding that claims seeking only economic damages are excluded from the OPLA's definition of "product liability claim"). The federal district court placed great significance on the inclusion of *Carrel* but exclusion of *LaPuma* in the 2005 Amendment's legislative history. According to the federal district court, omitting *LaPuma* from the 2005 Amendment's stated purpose evinced a "tacit acceptance of the Ohio Supreme Court's holding in *LaPuma*." 2018 WL 6628898 at *13.

**{¶ 7}** And the 2007 Amendment, which added "any public nuisance claim" to the definition of "product liability claim" in R.C. 2307.71(A)(13), did not persuade the federal district court otherwise. *See* 2018 WL 6628898 at *13. The 2007 Amendment's legislative history bills the amendment as an attempt "to clarify the General Assembly's original intent in enacting [the OPLA] . . . to abrogate all common law product liability causes of action" regardless of how they are pleaded. Am.Sub.S.B. No. 117, Section 3, 151 Ohio Laws, Part II, 2274, 2291. But the inclusion of "public nuisance claims" in the definition of "product liability claim" was "not intended to be substantive." *Id.* So, the federal district court reasoned, the 2007 Amendment left the OPLA's reach unaltered: it, along with the 2005 Amendment, eliminated all common-law theories of product liability seeking non-

4

economic damages but left common-law claims seeking economic damages or equitable relief intact. 2018 WL 6628898 at *13.

{¶ 8} In the Counties' public-nuisance claim, they seek equitable relief, not compensatory damages. Refusing to reconsider its reasoning from the Summit County Action, the federal district court denied the motion to dismiss. After the case went to trial and a jury rendered a verdict in the Counties' favor, the Pharmacies reiterated their OPLA-abrogation argument in a motion for judgment as a matter of law. That, too, was denied.

{¶ 9} The Pharmacies appealed. Recognizing that this court has not yet spoken on the proper interpretation of the OPLA in the aftermath of the 2005 and 2007 Amendments, the Sixth Circuit certified a question of state law. We accepted the certification and agreed to answer the following question:

> Whether the Ohio Product Liability Act, Ohio Revised Code § 2307.71 et seq., as amended in 2005 and 2007, abrogates a common law claim of absolute public nuisance resulting from the sale of a product in commerce in which the plaintiffs seek equitable abatement, including both monetary and injunctive remedies?

2023-Ohio-4259.

## II. ANALYSIS

### A. Ohio's statutory scheme for product-liability claims

{¶ 10} In 1988, Ohio's General Assembly enacted a statutory scheme for regulating product-liability claims: R.C. 2307.71 et seq. The definition of "product liability claim," which is the point of contention between the Counties and the Pharmacies, was originally limited to the following paragraph:

"Product liability claim" means a claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:

(1) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(2) Any warning or instruction, or lack of warning or instruction, associated with that product;

(3) Any failure of that product to conform to any relevant representation or warranty.

Former R.C. 2307.71(M), Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1674.

{¶ 11} Nearly a decade after the statute was enacted, this court interpreted R.C. 2307.71 in *Carrel v. Allied Prods. Corp.*, 1997-Ohio-12. This court was confronted with the question whether a common-law claim for negligent design of a product was abrogated by the OPLA. *Id.* at ¶ 13-14. Applying the principle that a statutory enactment does not abrogate common law unless the intent to do so is clear, this court concluded that the OPLA did not expressly eliminate causes of action sounding in negligence—such as negligent design. *Id.* at ¶ 17, 24. But the court went further. In dicta, this court put its imprimatur on a dissenting justice's earlier comment that "'it should now be understood that all common-law products liability causes of action survive the enactment of [the OPLA], unless *specifically* covered by the Act.'" (Emphasis added in *Byers* and *Curtis*.) *Id.* at ¶ 23, quoting *Byers v. Consol. Aluminum Corp.*, 1995-Ohio-216, (Douglas, J., dissenting) and *Curtis v. Square-D Co.*, 1995-Ohio-23, (Douglas, J. dissenting).

**{¶ 12}** Following *Carrel*'s limitation of the OPLA's abrogating effect, this court expanded opportunities for product-based lawsuits at common law. It did so by endorsing an unorthodox use of the tort of public nuisance in *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480. Public-nuisance suits were historically used to address violations of public rights "connected to real property or to statutory or regulatory violations involving public health or safety." *Id.* at ¶ 9. But, in *Beretta*, this court permitted a public-nuisance suit to proceed based on the manufacture, marketing, distribution, and sale of firearms. *Id.* at ¶ 7, 16. Relying on the Restatement of the Law Second, this court concluded that public-nuisance law covers "injuries caused by a product if the facts establish that the design, manufacturing, marketing, or sale of the product unreasonably interferes with a right common to the general public." *Id.* at ¶ 10.

**{¶ 13}** Several years later, the General Assembly enacted amendments to the OPLA in an apparent response to *Carrel* and *Beretta*. In 2005, an amendment added language to the definition of "product liability claim" to specify that such a claim is "asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code." R.C. 2307.71(A)(13); *see also* Am.Sub.S.B. No. 80, 150 Ohio Laws, 7915, 7954. It also added a new subsection: "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability causes of action." Former R.C. 2307.71(B), Am.Sub.S.B. No. 80, 150 Ohio Laws, 7915, 7955. The next year, in 2006, the General Assembly enacted a further amendment to the definition of "product liability claim," creating the version of R.C. 2307.71 that remains in effect today. A new paragraph was added addressing public-nuisance claims:

> "Product liability claim" *also includes any public nuisance claim* or cause of action at common law in which it is alleged that the design, manufacture, supply, marketing, distribution, promotion,

advertising, labeling, or sale of a product unreasonably interferes with a right common to the general public.

(Emphasis added.) Am.Sub.S.B. No. 117, 151 Ohio Laws, Part II, 2274, 2279 (codified at R.C. 2307.71(A)(13)).

*B. The statutory definition of "product liability claim" includes public-nuisance causes of action regardless of the kind of relief requested*

{¶ 14} Much of the debate between the parties turns on how the phrase "also includes" functions in the paragraph added by the 2007 Amendment. According to the Counties, "also includes" is not synonymous with "means." "Includes," they insist, signals the words that follow—i.e. "public nuisance claim"—are an example of a subset of a broader category and nothing more. The language added by the 2007 Amendment, according to the Counties, merely illustrates the type of claim that comes within the ambit of the already existing definition of "product liability claim": "[A] claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from" one of the enumerated product defects. R.C. 2307.71(A)(13). In other words, the Counties believe that the OPLA abrogates only the public-nuisance claims seeking compensatory damages.

{¶ 15} The Pharmacies disagree with the Counties' circumscribed construction of the OPLA. In their view, the phrase "also includes" expands the definition of product liability. It creates a second category of product-liability claims—public-nuisance claims based on the design, manufacture, supply, marketing, distribution, or sale of a product—that are abrogated by the OPLA. To reach this interpretation, the Pharmacies explain that "includes," while sometimes serving an illustrative function, may also perform additive duties. Divining the

appropriate meaning in a particular circumstance is a question of context, they say, and the General Assembly's choice to combine "also" with "includes" establishes that the additive meaning was intended.

{¶ 16} The Pharmacies have the better argument. Narrowly construing "also includes any public nuisance claim" to mean only those public-nuisance claims that satisfy the first paragraph of (A)(13) reads "also" out of the statute. It is true that "include" often serves to introduce a non-exhaustive list of examples of parts of a previously introduced whole. *See, e.g.*, Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 132 (2012). But the General Assembly did not merely say that product-liability claims "include" public-nuisance claims; it said that they "also include[]" public-nuisance claims.

{¶ 17} "Also" is additive. That is inherent in the meaning of "also," which is defined as "in addition." *Webster's Third New International Dictionary* (2002). Modifying "includes" with "also" thus signals an expansive, not illustrative, use of the term. *See Miller v. Youakim*, 440 U.S. 125, 136-137 (1979) (holding that the phrase "also include" was "language that unquestionably expand[ed] the scope" of the defined term); *D&A Rofael Ents., Inc. v. Tracy*, 1999-Ohio-256, ¶ 16 (interpreting "also includes" as expanding a statutory definition).

{¶ 18} In *D&A Rofael Ents.*, this court recognized that the General Assembly's use of "also includes" enlarged a statutory definition. At issue was whether a mall food court was part of the "premises" of several restaurants in the mall for tax purposes. *D&A Rofael Ents.* at ¶ 9. Resolution of the issue turned on the statutory definition of "premises," which contained two parts. The first part of the statute defined "premises" as "'any real property . . . upon which any person engages in selling tangible personal property at retail or making retail sales.'" *Id.* at ¶ 15, quoting R.C. 5739.01(K). However, the second part of the statute provided that "premises" "'*also includes* any real property or portion thereof designated for, or devoted to, use in conjunction with the business engaged in by such person.'"

(Emphasis added.) *Id.* at ¶ 16, quoting R.C. 5739.01(K). Rather than interpreting the second part of the relevant statute as illustrative of the first part, this court concluded that the second part "obviously" enlarged the statutory definition. *Id.* at ¶ 16. So too here.

{¶ 19} The cases cited by the Counties do not require a different result. In those cases, the statutes at issue did not use "also" to modify "include." *See In re Hartman*, 2 Ohio St.3d 154 (1983) (Interpreting former R.C. 2501.02(A), which provided, "'Upon an appeal upon questions of law to review . . . judgments or final orders of courts of record inferior to the court of appeals within the district, *including* the finding, order or judgment of a juvenile court" (emphasis added)); *In re Z.N.*, 2015-Ohio-1213, ¶ 14 (11th Dist.), quoting R.C. 2152.02(L) ("'Economic loss' means any economic detriment suffered by a victim of a delinquent act . . . and *includes* any loss of income due to lost time at work . . . ." (Emphasis added)). So, those cases are inapposite.

{¶ 20} The Counties draw our attention to *Cleveland Bar Assn. v. Misch*, 1998-Ohio-413, but this case is no help to them. In *Misch*, this court explained that "the practice of law is not limited to appearances in court, but *also includes* giving legal advice and counsel and the preparation of legal instruments and contracts." (Emphasis added.) *Id.* at ¶ 13. In *Misch*, the Counties say, this court used the phrase "also includes" to clarify the scope of the meaning of the phrase "practice of law" and so that's what the 2007 Amendment did, too. Not so.

{¶ 21} True, this court in *Misch* used the phrase "also includes" to clarify the definition of another phrase. What's important, however, is how the phrase "also includes" accomplished that task. The phrase did not introduce a list of additional acts already subsumed by the phrase "appearances in court." Had it served such a function, the Counties might have a point. Instead, "also includes" was used to show that the phrase "practice of law" encompasses acts that are different from, and additional to, "appearances in court"—namely, "giving legal

advice and counsel" and "preparing[ing] . . . legal instruments and contracts." *Id.* at ¶ 13. And that is precisely how "also includes" functions in R.C. 2307.71(A)(13): it expands the definition of "product liability claim."

{¶ 22} Because "includes" has been used in its additive sense, public-nuisance claims are a second, independent category of product-liability claims. This means that the confines of the first category of product-liability claims are of no moment when determining the bounds of the second. Instead, the parameters of the second category must be drawn from the second paragraph of R.C. 2307.71(A)(13), not the first.

{¶ 23} The second paragraph says that "any public nuisance claim or cause of action at common law in which it is alleged that the design, manufacture, supply, marketing, distribution, promotion, advertising, labeling, or sale of a product unreasonably interferes with a right common to the general public" is a product-liability claim. R.C. 2307.71(A)(13). Omitted from this definition is a requirement that "any public nuisance claim or cause of action at common law" seek compensatory damages. This omission is key. Product-liability claims subsume all public-nuisance claims based on a product as specified in (A)(13). The kind of relief requested is immaterial.

### C. *The OPLA does not limit product-liability claims to public-nuisance claims based on product defects*

{¶ 24} The Counties advance a similar statutory-interpretation argument with respect to product defects. The first paragraph of R.C. 2307.71(A)(13) requires that a product-liability claim arise from harm caused by a defective product, and the Counties contend that this requirement applies to public-nuisance claims, too. But this argument fails for the same reason as the Counties' argument about compensatory damages: any mention of defective products is absent from the expanded definition of "product liability claim" in (A)(13)'s second paragraph. *See* R.C. 2307.71(A)(13).

{¶ 25} The Counties also maintain that other provisions of the OPLA demonstrate that it covers only common-law product-liability claims that arise from harm caused by a defective product. Each of the OPLA's statutory analogs for common-law theories involve product defects, the Counties insist, and so the meaning of "product liability claim" as defined by R.C. 2307.71 must be limited to claims based on a product defect. *See, e.g.*, R.C. 2307.74 (manufacture defect); R.C. 2307.75 (design defect); R.C. 2307.76 (inadequate warning); R.C. 2307.77 (nonconformance with manufacturer's representations). We reject this argument because it contravenes the plain language of R.C. 2307.71(A)(13), which contains no requirement that a public-nuisance claim be based on a defective product.

{¶ 26} What's more, the OPLA's limitation on product-liability theories to those involving a defect by no means demands the conclusion that the definition of "product liability claim" is equally limited. Another possibility is that "product liability claim" is defined broadly enough to eliminate all product-based common-law claims while the rest of the OPLA is narrowly tailored to resurrect only some of the common-law theories into statutory form. Such an understanding of the OPLA is consistent with the plain text of R.C. 2307.71.

{¶ 27} We hold, therefore, that a public-nuisance claim need not involve allegations of a product defect to satisfy the definition of "product liability claim."

*D. The OPLA expressly abrogates all common-law public-nuisance claims*

{¶ 28} The remaining puzzle pieces easily fall into place following the conclusion that all product-based public-nuisance claims are product-liability claims. "[A]ll common law product liability claims or causes of action" are abrogated by R.C. 2307.71, et seq. R.C. 2307.71(B). This is straightforward: product-liability claims brought at common law—such as the Counties' claims— have been abrogated.

{¶ 29} The Counties nonetheless insist that public-nuisance claims seeking equitable relief are not abrogated by the OPLA. Adding common-law claims

12

seeking equitable relief to the definition of product-liability claim only to then bar the use of such causes of action is, in the Counties' view, incoherent. We are not convinced. The OPLA already abrogated common-law product-liability claims following the 2005 Amendment. Further amending the statute to clarify that product-liability claims disguised as public-nuisance claims, in the mold of the claim this court permitted in *Beretta*, is not incoherent.

{¶ 30} The Counties also suggest that the General Assembly is prohibited from abolishing a common-law cause of action without providing a reasonable statutory replacement. For this, they cite the concurring opinion from *Mominee v. Scherbarth*, 28 Ohio St.3d 270 (1986). There, the concurring opinion stated that "[w]here a right or action existed at common law at the time the Constitution was adopted, that right is constitutionally protected, by the access-to-the-courts provision, from subsequent legislative action which abrogates or impairs that right without affording a reasonable substitute." *Id.* at 291-292 (Douglas, J., concurring). In the time since Justice Douglas penned his concurring opinion in *Mominee*, this court has clarified that "the right to a remedy protects only those causes of action that the General Assembly identifies and for the period of time it determines." *Antoon v. Cleveland Clinic Found.*, 2016-Ohio-7432, ¶ 27, citing *Ruther v. Kaiser*, 2012-Ohio-5686, ¶ 12. That is because "'there is no property or vested right in any of the rules of the common law.' " *Id.*, quoting *Leis v. Cleveland Ry. Co.*, 101 Ohio St. 162 (1920), syllabus.

{¶ 31} The plain language of the OPLA abrogates product-liability claims, including product-related public-nuisance claims seeking equitable relief. We are constrained to interpret the statute as written, not according to our own personal policy preferences. For this reason, we answer the certified question in the affirmative: all public-nuisance claims alleging "that the design, manufacture, supply, marketing, distribution, promotion, advertising, labeling, or sale of a

product unreasonably interferes with a right common to the general public" have been abrogated by the OPLA, including those seeking equitable relief.

*E. Resort to legislative history to twist the plain meaning of the OPLA is improper*

**{¶ 32}** Notwithstanding the plain text of R.C. 2307.71, the Counties insist that the legislative history infuses the text with a different meaning—one more agreeable to their purposes. But even for those who believe that resorting to legislative history is sometimes appropriate, "if the text of a statute is unambiguous, it should be applied by its terms without recourse to policy arguments, legislative history, or any other matter extraneous to the text." Scalia & Garner, *Reading Law*, at 436; *see also Beachwood City School Dist. Bd. of Edn. v. Warrensville Hts. City School Dist. Bd. of Edn.*, 2022-Ohio-3071, ¶ 55 (Fischer, J., dissenting) ("[O]nly when the statute is ambiguous do we look to legislative history and other factors to provide guidance."). We find no ambiguity in R.C. 2307.71; therefore, its legislative history is irrelevant.

**{¶ 33}** It is also worth noting that the Counties' arguments about the legislative history are not only inconsistent with the plain text of R.C. 2307.71, but they are also inconsistent with an uncodified section of the 2007 Amendment adopted by the General Assembly. That section expresses the General Assembly's intent to abrogate "all common law product liability causes of action including common law public nuisance causes of action, regardless of how the claim is described, . . . *including claims against a manufacturer or supplier for a public nuisance allegedly caused by a manufacturer's or supplier's product*." (Emphasis added.) Am.Sub.S.B. No. 117, Section 3, 151 Ohio Laws, Part II, 2274, 2291. Nothing in this statement of purpose suggests that claims abrogated by R.C 2307.71 are limited to those seeking compensatory damages or involving defective products. Rather, the statement evinces an intent to abrogate all public-nuisance claims based on a product—just like the codified statute says.

{¶ 34} We recognize that the opioid crisis has touched the lives of people in every corner of Ohio. The devastation experienced by these private citizens, individually and collectively, undoubtedly has far-reaching consequences for their communities and for the State as a whole. Creating a solution to this crisis out of whole cloth is, however, beyond this court's authority. We must yield to the branch of government with the constitutional authority to weigh policy considerations and craft an appropriate remedy. And the General Assembly has spoken, plainly and unambiguously: a public-nuisance claim seeking equitable relief is not that remedy.

*F. The Counties' claims are based on the "sale" of a product*

{¶ 35} One final argument from the Counties that we must address is that their claims are based on the Pharmacies' dispensing of opioids, not the "design," "manufacture," "marketing," "promotion," "advertising," "labeling," "supply," "sale," or "distribution" of opioids. *See* 2307.71(A)(13). Dispensing, they claim, is outside the scope of the OPLA. But the distinction between "dispensing" and "selling" or "distributing" is one without a difference in this context. To "dispense," particularly in the context of medicine, means "to prepare and distribute." *Webster's Third New International Dictionary* (2002). Regardless of whether "dispensing" also qualifies as "supplying," it is equivalent to "distributing." Furthermore, dispensing a product—a drug, in this case—in exchange for a price is indisputably a sale. *See Black's Law Dictionary* (12th Ed. 2024) (defining "sale" as "[t]he transfer of property . . . for a price"). And because the OPLA includes public-nuisance claims based on the distribution or sale of a product within the definition of "product liability claim," the Counties' claims based on dispensing a product are abrogated.

### III. CONCLUSION

{¶ 36} For the foregoing reasons, we answer the certified question of state law in the affirmative.

So answered.

_____

**STEWART, J., joined by DONNELLY, J., concurring in part and dissenting in part.**

{¶ 37} I concur in the majority's analysis of this certified question except that I would hold that public-nuisance claims seeking equitable relief are not abrogated by the Ohio Product Liability Act, R.C. 2307.71 et seq. ("OPLA").

{¶ 38} Under the plain language of the OPLA, a product-liability claim is "a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code *and* that seeks to recover compensatory damages." (Emphasis added.) R.C. 2307.71(A)(13). Respondents Trumbull County and Lake County (collectively, the "Counties") have not sought, and did not receive, compensatory damages. Instead, they sought and received equitable relief; therefore, their claims do not meet the second prong of the definition of a "product liability claim" and thus are not abrogated by the OPLA.

{¶ 39} Specifically, the Counties sought and received equitable relief in the form of money to be used for abatement of the nuisance, i.e., funds to treat issues caused by the oversupply of opioids. Petitioners Walgreens, CVS, and Walmart (collectively, the "Pharmacies") argue that the relief the Counties sought and that the federal district court awarded went too "far beyond the well-established scope of equitable abatement under Ohio law" for it to be fairly considered equitable relief and, as such, "is in fact akin to compensatory damages." But this argument is unavailing. Any award to abate a public nuisance like the opioid epidemic would certainly be substantial in size and scope, given that the claimed nuisance is both long-lasting and widespread. But just because an abatement award is of substantial size and scope does not mean it transforms it into a compensatory-damages award.

{¶ 40} The equitable relief awarded by the federal court was designed, and has been used, to abate the nuisance caused by the flood of opioids into the market, not to compensate the Counties for the loss of life or economic consequences of

16

opioid addiction. As the County Commissioners Association of Ohio's amicus brief explains, Cuyahoga and Summit Counties, the bellwether plaintiffs in the multidistrict National Prescription Opiate Litigation, *see generally In re Natl. Prescription Opiate Litigation*, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018), have used the money they received as an abatement to create or bolster opioid-addiction prevention and treatment services. For example, Cuyahoga County used the abatement award to construct and fund various treatment facilities, and other counties have used the award to create or expand various drug treatment programs and fund harm-reduction strategies, including safe needle exchanges, naloxone, drug courts, peer counseling, and more. These programs are designed to address both the current and long-term effects of the opioid epidemic, yet no one would argue that the programs are "compensating" the Counties. Instead, the equitable relief allows the local governments to fulfill their duty to protect public health through the abatement of a public nuisance.

{¶ 41} The Pharmacies and the majority ignore the plain language of the statute to their error. As Judge Polster noted in his decision in a sister case, nothing in either the 2005 or 2007 OPLA amendments changed the meaning of the term "product liability claim" to exclude public-nuisance claims seeking only equitable relief. *See id*. at *13-14. In deciding this certified question of state law, this court need look no further than the explicit words the General Assembly has chosen (and has not changed) in R.C. 2307.71 et seq.: "'Product liability claim' means a claim or cause of action . . . that seeks to recover compensatory damages . . . ." For that reason, my answer to the certified question is no: claims for equitable relief under Ohio's public-nuisance law are not abrogated by the OPLA. I therefore concur in part and dissent in part.

_____

Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., David C. Frederick, Minsuk Han, Ariela M. Migdal, Travis G. Edwards, Kathleen W. Hickey, Daren G.

Zhang, and Kelley C. Schiffman; Lanier Law Firm, W. Mark Lanier, and M. Michelle Carreras; Plevin & Gallucci Co., L.P.A., and Frank L. Gallucci; Thrasher Dinsmore & Dolan, L.P.A., and Leo M. Spellacy, Jr.; Napoli Shkolnik, Hunter J. Shkolnik, and Salvatore C. Badala; Spangenberg Shibley & Liber, and Peter H. Weinberger, for respondents.

Sullivan & Cromwell L.L.P., Jeffrey B. Wall, and Morgan L. Ratner, for Petitioners Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.

Jones Day, Noel J. Francisco, John M. Majoras, Anthony J. Dick, and James Saywell, for Petitioner Walmart Inc.

Munger, Tolles & Olson L.L.P., Donald B. Verrilli, Jr., and Ginger D. Anders, for Petitioners CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS Tennessee Distribution, L.L.C., CVS RX Services, Inc., CVS Indiana, L.L.C.

Shook, Hardy & Bacon L.L.P., Philip S. Goldberg, and Victor E. Schwartz; Dinsmore & Shohl L.L.P., Frank C. Woodside III, and Gregory P. Mathews, in support of petitioners for amicus curiae Product Liability Advisory Council.

Alston & Bird L.L.P., Brian D. Boone, D. Andrew Hatchett, and Ethan J. Bond, in support of petitioners for amici curiae Chamber of Commerce of the United States of America and the American Tort Reform Association.

Dickinson Wright P.L.L.C., Terrence O'Donnell, Kevin D. Shimp, and David A. Lockshaw, Jr., in support of petitioners for amici curiae The Ohio Chamber of Commerce and Ohio Alliance for Civil Justice.

The Buckeye Institute, Jay R. Carson, and David C. Tryon, in support of petitioners for amicus curiae the Buckeye Institute.

Murray Murphy Moul + Basil L.L.P., and Jonathan P. Misny, in support of respondents for amicus curiae the Cleveland Building & Construction Trade Council.

Allen Stovall Neuman & Ashton L.L.P., and Rick L. Ashton, in support of respondents for amici curiae County Commissioners Association of Ohio, Ohio Association of County Behavioral Health Authorities, Ohio Municipal League, Ohio Township Association, Ohio Mayors Alliance, and Fraternal Order of Police of Ohio, Inc.

_____