[Cite as *York v. Hutchins*, 2014-Ohio-988.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

REDA YORK, et al.,                          :

      Plaintiffs-Appellants,          :

  - vs -                                          :

MATTHEW G. HUTCHINS, M.D., et al.,    :

      Defendants-Appellees.          :

CASE NO. CA2013-09-173

<u>O P I N I O N</u>
3/17/2014

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV13 02 0635

Eric C. Deters & Partners PSC, Eric C. Deters, 5247 Madison Pike, Independence, Kentucky 41051, for plaintiffs-appellants

Mannion & Gray Co., L.P.A., Judd R. Uhl, 909 Wright's Summit Parkway, Suite 230, Ft. Wright, Kentucky 41011, for defendants-appellees, Matthew G. Hutchins, M.D., Frank T. Jenikee, M.D. and Greater Cincinnati Cardiovascular Consultants, Inc.

Calderhead, Lockemeyer and Peschke, David C. Calderhead, 5405 DuPont Circle, Suite E, Milford, Ohio 45150, for defendant-appellee, James M. Wilson, M.D.

Rendigs, Fry, Kiely & Dennis, LLP, Jeffrey M. Hines and Karen A. Carroll, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202, for defendants-appellees, Fairfield Cardiac Cath Labs, Mercy Hearth Institute, Mercy Fairfield Hospital and Heart Hospital at Mercy Fairfield

**S. POWELL, J.**

{¶ 1} Plaintiffs-appellants, Reda and Jimmy York, appeal from the decision of the

Butler County Court of Common Pleas granting the motions to dismiss filed by defendants-appellees, Matthew G. Hutchins, M.D., James M. Wilson, M.D., Frank T. Jenikee, M.D., as well as Fairfield Cardiac Cath Labs, Mercy Heart Institute, Mercy Fairfield Hospital and The Heart Hospital at Mercy Fairfield, LLC, respectively. For the reasons outlined below, we affirm.[1]

{¶ 2} The facts taken from the Yorks' complaint are as follows. In May of 2003, Mrs. York was ordered to undergo an electrocardiogram and stress test after she went to her doctor complaining of chest pains. Following these tests, Mrs. York was then ordered to undergo an angiogram. On June 10, 2003, Dr. Matthew Hutchins performed the angiogram on Mrs. York at the Fairfield Cardiac Cath Labs. Based on the angiogram test results, Dr. Hutchins recommended that Mrs. York be admitted to the Mercy Fairfield Hospital and undergo open heart surgery immediately. Dr. James Wilson performed the open heart surgery on Mrs. York the following day.

{¶ 3} Several years later, on March 18, 2007, Mrs. York went in for a check-up and was ordered to undergo a second angiogram. The next day, Dr. Frank Jenikee performed the angiogram on Mrs. York. The record does not contain the results of this second angiogram. Approximately two years later, on January 23, 2009, an echocardiogram was performed on Mrs. York that revealed "normal left ventricular, EF of 65% (normal), no abnormalities, mild mitral regurgitation and trace tricuspid regurgitation."

{¶ 4} On May 17, 2012, Mrs. York consulted with Dr. George S. George of the Ohio Heart and Vascular Center. As a result of this consultation, Dr. George ordered Mrs. York to undergo a cardiac catheterization, which was then performed on June 29, 2012. Several days later, on July 3, 2012, Dr. George informed Mrs. York that the results of the cardiac

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar.

catheterization were normal, that she "never needed the bypass, that she did not have blockage, that there was never evidence of obstructive coronary artery disease," and that her prior surgery was "unnecessary."

{¶ 5} On February 26, 2013, the Yorks filed their original complaint in this matter naming the above listed appellees as defendants.[2] As part of their complaint, the Yorks alleged claims of medical malpractice, battery, intentional infliction of emotional distress, and fraud, among others. In separate filings, the various appellees filed motions to dismiss the Yorks' claims brought against them pursuant to Civ.R. 12(B)(6). In separate decisions, the trial court ultimately granted each of the appellees' various motions to dismiss. In so holding, the trial court found all of the Yorks' claims were "medical claims" subject to the one-year statute of limitations and four-year statute of repose as found in R.C. 2305.113(A) and (C).

{¶ 6} The Yorks now appeal from the trial court's decision, raising one assignment of error for review.

{¶ 7} THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY GRANTING APPELLANTS' [sic] MOTION TO DISMISS.

{¶ 8} In their sole assignment of error, the Yorks argue the trial court erred by granting the various appellees' motions to dismiss pursuant to Civ.R. 12(B)(6). We disagree.

{¶ 9} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *Buckner v. Bank of New York*, 12th Dist. Clermont No. CA2013-07-053, 2014-Ohio-568, ¶ 13, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). "[W]hen a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving

---

2. The Yorks also filed suit against Greater Cincinnati Cardiovascular Consultants, Inc., only to later dismiss their claims against it with prejudice.

party." *Byrd v. Faber*, 57 Ohio St.3d 56, 60 (1991). In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6), it must appear beyond a reasonable doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14. A reviewing court conducts a de novo review of a trial court's decision on a motion to dismiss. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

{¶ 10} Initially, the Yorks argue the trial court erred in dismissing their various claims by finding their claims were time barred by the one-year statute of limitations for medical malpractice claims as found in R.C. 2305.113(A). However, contrary to their claims otherwise, the trial court actually dismissed their claims as being outside the four-year statute of repose as found in R.C. 2305.113(C). Pursuant to R.C. 2305.113(C), except for certain enumerated exceptions not applicable here:

> (1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

> (2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

Simply stated, regardless of the applicable statute of limitations, "a person must file a medical claim no later than four years after the alleged act of malpractice occurs or the claim will be barred." *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, ¶ 2.

{¶ 11} As noted above, the Yorks' claims are all based on allegations that Dr. James Wilson performed unnecessary heart surgery on Mrs. York on June 11, 2003. Yet, the Yorks did not file their complaint in this matter until nearly a decade later on February 26, 2013. This is well outside the four-year statute of repose as found in R.C. 2305.113(C). The trial

court, therefore, did not err by dismissing the Yorks' claims in this matter. This is true regardless of when the Yorks' claims actually accrued under R.C. 2305.113(A).

{¶ 12} The Yorks next argue the trial court erred by finding their fraud claim was also barred by the statute of repose by finding it constituted a "medical claim" as defined by R.C. 2305.113(E)(3).[3] As defined by that section, a "medical claim" means "any claim that is asserted in any civil action against a physician * * * that arises out of the medical diagnosis, care, or treatment of any person." The term also includes the following:

> (a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;
>
> (b) Claims that arise out of the medical diagnosis, care, or treatment of any person and to which either of the following applies:
>
> > (i) The claim results from acts or omissions in providing medical care.
> >
> > (ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.
>
> (c) Claims that arise out of the medical diagnosis, care, or treatment of any person and that are brought under section 3721.17 of the Revised Code.

{¶ 13} Notwithstanding the broad definition of "medical claim" found in R.C. 2305.113(E)(3), the Ohio Supreme Court has recognized that in some cases a fraud claim may exist separate and distinct from the other "medical claims" alleging medical malpractice. *See Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54 (1987), paragraph one of the syllabus. However, this is true only where "the decision to misstate facts *cannot* be characterized as medical in nature." (Emphasis added.) *Id.* at 56.

---

3. Generally, a fraud claim must be filed within four years from the date the cause of action accrued. *See* R.C. 2305.09(C). A cause of action for fraud does not accrue until the plaintiff either discovers or should have discovered the fraud. *Luburgh v. Bishop*, 2d Dist. Montgomery No. 25818, 2014-Ohio-236, ¶ 14, citing *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 180 (1989), paragraph 2b of the syllabus.

{¶ 14} After a thorough review of the record, we find no error in the trial court's decision finding the Yorks' so-called "fraud" claim was actually a claim alleging medical malpractice that was also barred under R.C. 2305.113(C). As the Yorks readily admit, the alleged "fraud" was based on the "statements and actions" made to Mrs. York by Dr. Hutchins, thereby leading to her "unnecessary surgery." This clearly falls under the definition of a "medical claim" defined by R.C. 2305.113(E)(3) because it relates directly to her medical diagnosis, care, and treatment. *See, e.g., Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711 (finding allegations doctor committed fraud by recommending unnecessary surgery and by not telling patient that the intended procedure was risky and untested were "medical claims" as they "go squarely to her diagnosis, care and treatment").

{¶ 15} "It is well-accepted that misconduct perpetrated by medical professionals constitutes malpractice, irrespective of the label affixed by the complaining party." *Mardis v. Meadow Wood Nursing Home*, 12th Dist. Brown No. CA2010-04-007, 2010-Ohio-4800, ¶ 8. Moreover, "[c]lever pleading cannot transform what are in essence medical claims into claims for fraud." *Hensley* at ¶ 19. The Yorks' attempt to allege a separate so-called "fraud" claim independent of their other medical malpractice claims is just that – an improper exercise in clever pleading. The trial court, therefore, did not err by finding the Yorks' so-called "fraud" claim was also barred by the statute of repose. The Yorks' claim otherwise is without merit and overruled.

{¶ 16} Finally, the Yorks claim the statute of repose should not apply to bar their claims because it is unjust and unconstitutional in violation of the right-to-remedy clause as found under Article I, Section 16 of the Ohio Constitution. The Ohio Supreme Court explicitly denied this argument in *Ruther v. Kaiser*, wherein the Ohio Supreme Court held "the medical-malpractice statute of repose found in R.C. 2305.113(C) does not extinguish a vested right and thus does not violate the Ohio Constitution, Article I, Section 16." *Id.*, 2012-Ohio-5686 at

¶ 25. Therefore, in light of the Ohio Supreme Court's decision in *Ruther*, the Yorks' final argument is likewise without merit and overruled. Accordingly, having found no merit to any of their three arguments advanced here, the Yorks' single assignment of error is overruled.

{¶ 17} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.