[Cite as *Bugh v. Dept. of Rehab. & Corr.*, 2019-Ohio-112.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Richard Bugh, | : | |
| Plaintiff-Appellant, | : | No. 17AP-779 |
| | | (Ct. of Cl. No. 2016-00387) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Rehabilitation and Correction et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on January 15, 2019

**On brief**: *McNamara, Demczyk Co., L.P.A.*, and *Sidney N. Freeman*, for appellant. **Argued**: *Sidney N. Freeman*.

**On brief**: *Dave Yost*, Attorney General, *Jeanna V. Jacobus*, and *Brian Kneafsey*, for appellee Ohio Department of Rehabilitation and Correction. **Argued**: *Brian Kneafsey*.

APPEAL from the Court of Claims of Ohio

BROWN, J.

{¶ 1} Plaintiff-appellant, Richard Bugh, appeals from a judgment of the Court of Claims of Ohio granting the Civ.R. 56(C) motion for summary judgment filed by defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). Because the statute of repose does not bar Bugh's complaint against ODRC, we reverse.

{¶ 2} On May 4, 2016, Bugh filed a complaint for medical negligence against ODRC and the Ohio State University Wexner Medical Center ("OSUWMC"). Bugh's complaint alleged both defendants failed to properly treat, manage, and/or diagnose his

diaphragmatic paralysis. Bugh asserted he suffered "irreversible diaphragmatic paralysis," and associated pain and suffering, as a result of defendants' negligence. (Compl. at ¶ 13, 18.)

{¶ 3} Bugh was incarcerated in an ODRC institution from 1989 to 2014. Beginning in 2008, Bugh began to experience difficulty breathing. Bugh sought treatment for his breathing troubles from doctors at both ODRC and OSUWMC; yet his respiratory distress continued to progress. Following his release from prison, Bugh went to a Veterans Affairs ("VA") Hospital on November 21, 2014. Doctors at the VA Hospital diagnosed Bugh with bilateral diaphragmatic paralysis caused by phrenic nerve damage.

{¶ 4} The parties stipulated Drs. Todd Houglan and Martin Akusoba were employees of ODRC, and Drs. James O'Brien, Amy Pope-Harman, and Bakari Elsheikh were employees of OSUWMC.

{¶ 5} On April 26, 2017, OSUWMC filed a Civ.R. 56(C) motion for summary judgment. OSUWMC asserted Bugh's claims against OSUWMC were barred by the statute of repose contained in R.C. 2305.113(C).

{¶ 6} On July 31, 2017, the Court of Claims granted OSUWMC's motion for summary judgment and dismissed OSUWMC from the action. The court observed that, in the expert reports attached to OSUWMC's motion, "the only standard of care violations identified on the part of any medical professional at OSUWMC were by Dr. James O'Brien." (Entry of Partial Dismissal at 2-3.) As Dr. O'Brien only saw Bugh in 2008 and 2009, the court concluded that Bugh's complaint against OSUWMC was time-barred by the statute of repose.

{¶ 7} ODRC filed its motion for summary judgment on August 9, 2017. ODRC supported its motion with an affidavit from its counsel which authenticated copies of the reports from Bugh's expert witnesses, Drs. John Conomy and David Thomas. ODRC acknowledged "[b]oth experts opine[d] that DRC should have appreciated the neurological etiology and provided Mr. Bugh with spinal decompression at some point, but no later than 2011 or very early 2012." (ODRC Mot. for Summ. Jgmt. at 2.) As such, ODRC argued Bugh's May 4, 2016 complaint was filed outside the R.C. 2305.113(C) four-year repose period.

{¶ 8} Bugh filed a response to ODRC's motion for summary judgment on September 1, 2017. Bugh asserted ODRC's failure to properly manage, diagnose, and/or treat his progressively worsening phrenic nerve impingement continued until his release

from prison on November 21, 2014. Bugh filed affidavits from Drs. Conomy and Thomas to support his response in which the experts opined that procedures in addition to spinal decompression, such as diaphragmatic plication and/or pacing, could have offered Bugh some relief through November 21, 2014. (*See* Conomy Aff. at ¶ 7; Thomas Aff. at ¶ 9.)

{¶ 9} On October 4, 2017, the Court of Claims granted ODRC's motion for summary judgment. The court initially observed Drs. Conomy's and Thomas' reports were properly submitted pursuant to Local Rule of the Court of Claims of Ohio ("L.C.C.R.") 7(E). The court observed that both doctors were critical of Dr. O'Brien's initial care and treatment of Bugh, and that Dr. Thomas "criticize[d] the care and treatment rendered by Dr. Houglan or medical professionals, apparently through January 2012." (Entry Granting Def's. Mot. for Summ. Jgmt. at 3.)  Regarding Drs. Conomy's and Thomas' affidavits, the court held these affidavits "set forth new opinions on issues that the experts did not raise in their reports," and that the new opinions in the affidavit were barred under L.C.C.R. 7(E). (Entry Granting Def's. Mot. for Summ. Jgmt. at 3.)  *See* L.C.C.R. 7(E) (stating that "[a]n expert will not be permitted to testify or provide opinions on issues not raised in his report").

{¶ 10} The court observed that "the essence of plaintiff's claim is that defendants failed to timely diagnose spinal compression as the cause of his breathing problems and to offer treatment to decompress the spine and prevent him from becoming what his experts refer to as a 'respiratory cripple.' " (Entry Granting Def's. Mot. for Summ. Jgmt. at 4.) The court noted Dr. Conomy's report, which stated that Bugh "would have been a candidate for spinal decompression and very likely relief of his breathing difficulties. This could have been done as late as 2011." (Dr. Conomy Report at 3.) The court concluded that "[e]ven if there were continued malpractice through November 21, 2014, the malpractice upon which plaintiff's claim is based had to have occurred within the timeframe when plaintiff was a candidate for spinal decompression, which was more than four years before plaintiff commenced this action." (Entry Granting Def's. Mot. for Summ. Jgmt. at 5.) Accordingly, the court held the medical negligence statute of repose barred Bugh's action against ODRC.

{¶ 11} Bugh appeals, assigning the following two errors for our review:

> [I.] THE TRIAL COURT ERRED, TO THE PREJUDICE OF MR. BUGH, BY GRANTING ODRC'S MOTION FOR SUMMARY JUDGMENT.

[II.] THE TRIAL COURT ERRED, TO THE PREJUDICE OF MR. BUGH, BY INTERPRETING THE OHIO STATUTE OF REPOSE FOR MEDICAL MALPRACTICE ACTIONS IN SUCH A WAY THAT HIS RIGHT TO COURT ACCESS UNDER THE OHIO CONSTITUTION WAS VIOLATED.

{¶ 12} Summary judgment is proper only when the moving party demonstrates that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997).

{¶ 13} Bugh's first assignment of error asserts the Court of Claims erred in granting ODRC's motion for summary judgment. Bugh does not assign the Court of Claims' award of summary judgment to OSUWMC as error in the present appeal. (*See* Appellant's Brief at 9.)

{¶ 14} The Court of Claims concluded the four-year statute of repose in R.C. 2305.113(C) barred Bugh's complaint against ODRC. The Court of Claims determined on summary judgment that once Bugh was no longer eligible for spinal decompression treatment that any alleged medical negligence ended and did not continue. Bugh's expert stated that had he received spinal decompression treatment he "would not be the respiratory cripple he is today." (Dr. Thomas Report at 11.) We note the present action concerns solely a medical negligence claim based on personal injury; the action does not concern a wrongful death claim.

{¶ 15} While a statute of limitations "establishes 'a time limit for suing in a civil case, based on the date when the claim accrued,' " a statute of repose "bars 'any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting injury.' " *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, ¶ 11, quoting *Black's Law Dictionary* 1637 (10th Ed.2014). Thus, statutes of repose and statutes of limitation "have distinct applications." *Id.* While statutes of limitations "require plaintiffs to pursue 'diligent prosecution of known claims,' "

statutes of repose "effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.' " *CTS Corp. v. Waldburger*, 573 U.S. 1, 8, 9 (2014), quoting *Black's Law Dictionary* 1546 (9th Ed.2009) and 54 C.J.S., *Limitations of Actions*, Section 7 at 24 (2010).

{¶ 16} A statute of limitations begins to run when the cause of action accrues. R.C. 2305.113(A). In *Prysock v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 01AP-1131, 2002-Ohio-2811, ¶ 11, we provided guidance on how to determine the accrual date for the purposes of medical negligence:

> In determining the accrual date for a medical malpractice cause of action, courts examine three factors: (1) the time at which the injured party became aware, or should have become aware, of the extent and seriousness of his condition; (2) whether the injured party was aware, or should have been aware, that the condition stemmed from a specific professional medical service previously rendered him; and (3) whether the condition would put a reasonable person on notice of the need to inquire about the cause of the condition. *Hershberger v. Akron City Hosp.*(1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph one of the syllabus.

{¶ 17} Ohio's statute of limitations for medical negligence actions states that "an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued." R.C. 2305.113(A). *See also* R.C. 2305.113(B)(1) (providing a 180-day extension to the one-year limitations period in R.C. 2305.113(A) if the prospective medical negligence claimant provides the defendant with written notice of the forthcoming action).

{¶ 18} The Court of Claims applied the statute of repose (R.C. 2305.113(C)) to Bugh and held that his suit was time-barred under the statute of repose. The Court of Claims set an unspecified date in late 2011 as the time when the medical negligence occurred, noting this date was the last time Bugh was seen by prison doctors who could have ordered him to have spinal decompression treatment but instead did nothing. Bugh's condition continued to worsen thereafter, resulting in Bugh's present condition as a "respiratory cripple."

{¶ 19} A statute of repose "puts an outer limit on the right to bring a civil action," and that "limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *CTS Corp.* at 8. Thus, a "statute of repose limit is 'not related to the accrual of any cause of action; the injury need

not have occurred, much less have been discovered.' " *Id.*, quoting 54 C.J.S., *Limitations of Actions*, Section 7 at 24 (2010). A repose provision is essentially "equivalent to 'a cutoff.' " *Id.*, quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

{¶ 20} Ohio's medical negligence statute of repose, R.C. 2305.113(C), provides that "[n]o action upon a medical * * * claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim." R.C. 2305.113(C)(1). If an action on a medical claim "is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim, then, any action upon that claim is barred." R.C. 2305.113(C)(2). R.C. 2305.113(C) is "a true statute of repose that applies to both vested and nonvested claims." *Antoon* at ¶ 1. Thus, a medical negligence action "must be filed within four years of the occurrence of the act or omission alleged to have caused a plaintiff's injury." *Id.*

{¶ 21} The medical negligence statute of repose was enacted by the General Assembly in 1975 as an alleged "emergency measure," in a "legislative 'response to what was largely perceived throughout the country to be a medical negligence "crisis" manifested by sharply increased medical malpractice insurance premiums, cancellation of policies, and physician work slowdowns.' " *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 273-74 (1986), quoting *Vance v. St. Vincent Hosp. & Med. Ctr.*, 64 Ohio St.2d 36, 40 (1980). "The statute of repose exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation." *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, ¶ 19. *See id.* at ¶ 20 (observing that forcing medical providers to defend medical claims that occurred "10, 20, or 50 years before presents a host of litigation concerns, including the risk that evidence is unavailable through the death or unknown whereabouts of witnesses, the possibility that pertinent documents were not retained, [and] the likelihood that evidence would be untrustworthy due to faded memories").

{¶ 22} "Although in some cases, discovery of an injury will not occur within the time frame chosen, the General Assembly has struck a rational balance between the rights of prospective claimants to pursue their allegations and the rights of prospective defendants to have protection from stale litigation." *Id.* at ¶ 28. The Supreme Court of Ohio has

"continued to uphold the constitutionality of statutes of repose in some circumstances," and specifically has held that "statutes of repose do not automatically violate the Ohio Constitution's right-to-remedy provision." *Antoon* at ¶ 18, citing *Ruther* at syllabus; *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, paragraph two of the syllabus; *Opalko v. Marymount Hosp.,* 9 Ohio St.3d 63, 65 (1984). In *Mominee* at syllabus, however, the court held the medical negligence statute of repose was unconstitutional as applied to minors.

{¶ 23} Exceptions to the R.C. 2305.113(C) repose period exist "for malpractice discovered during the fourth year after treatment" (and for medical negligence that results in leaving a foreign object in a patient's body). *Ruther* at ¶ 2, citing R.C. 2305.113(D)(1) and (2). Such exceptions permit one additional year after discovery of an injury (as opposed to when a cause of action "accrues" as is the triggering mechanism in the application of the statute of limitations) to file suit. *Id.* Since Bugh discovered the medical negligence on the date he went to the VA hospital, November 21, 2014, he discovered it in the first three years of the statute of repose. Accordingly, the exception in R.C. 2305.113(D)(1) is irrelevant. We focus then solely on the four-year period of the statute of repose.

{¶ 24} "Simply stated, regardless of the applicable statute of limitations, 'a person must file a medical claim no later than four years after the alleged act of malpractice occurs or the claim will be barred.' " *York v. Hutchins*, 12th Dist. No. CA2013-09-173, 2014-Ohio-988, ¶ 10, quoting *Ruther* at ¶ 2. *See also Mominee* at 273; *Pearsall v. Guernsey*, 3d Dist No. 5-16-25, 2017-Ohio-681, ¶ 20. *See also Wade v. Reynolds*, 34 Ohio App.3d 61 (10th Dist.1986); *Atwood v. UC Health*, S.D.Ohio No. 1:16cv593 (Aug. 17, 2018) (holding that Ohio's saving statute, R.C. 2305.19, applies to "save" a case originally filed within the four-year repose period which was subsequently dismissed and refiled within one year). To determine whether the statute of repose bars an action, we must assess the last culpable act or omission and determine whether the complaint was filed within four years of that occurrence or, if subsequently dismissed, was refiled pursuant to the savings statute within one year of the dismissal even though such refiled complaint is past the four-year period. *Wade.*

{¶ 25} Appellant asserts the occurrence date for the statute of repose period "was the date Mr. Bugh was released from prison, November 21, 2014, when Drs. Houglan and

Akusoba no longer were his physicians." (Appellant's Brief at 16.) The date of Bugh's release from prison and, thus, the date on which Bugh no longer received medical treatment from ODRC, would be relevant to the statute of limitations period. *See Ruther* at ¶ 25 (recognizing that "[f]or purposes of the statute of limitations, * * * a medical claim accrues upon the later of the termination of the doctor-patient relationship or the discovery of the injury"). However, the date Bugh was released from prison is irrelevant for purposes of the statute of repose.

{¶ 26} In their reports, both Drs. Conomy and Thomas observed that, prior to his incarceration in 1989, Bugh had experienced traumatic injuries to his neck. These injuries eventually led to compression of his spine and the resulting nerve damage and paralyzing of his respiratory muscles. Both doctors were critical of ODRC's medical staff's failure to adequately diagnose the cause of Bugh's progressively worsening respiratory difficulties and/or to offer him meaningful relief. Dr. Conomy opined that "[b]y 2013, Mr. Bugh was a pulmonary cripple unless he was standing or seated upright." (Dr. Conomy Report at 3.) Dr. Thomas opined that the "definitive procedure" for Bugh's issues would have been "to release the slow compression of the phrenic nerves in the cervical region," and that the "lack of actions by [Bugh's] providers were responsible for his crippling status and were a deviation from standard of care." (Dr. Thomas Report at 11-12.)

{¶ 27} While Dr. Conomy opined that Bugh would have been a candidate for spinal decompression surgery as late as 2011, Dr. Thomas opined that "[i]f by 2011 or 2012 [Bugh] had been offered a laminectomy and discectomy he more likely than not would not be a respiratory cripple today." (Dr. Thomas Report at 10-11.) Dr. Thomas does not qualify when in 2012 this procedure had to occur. Viewing the statement in a light most favorable to Bugh, if Bugh had received a laminectomy and discectomy at any point in 2012, he would not be a "respiratory cripple" today.

{¶ 28} Dr. Thomas reviewed Bugh's medical records, and explained that Bugh's medical providers ignored both "his declining respiratory status," as well as "his nerve dysfunction on the right side of his body." (Dr. Thomas Report at 10.) Bugh's records demonstrated that "by 2011 there [was] the new onset of a wing scapula on the RIGHT." (Emphasis sic.) (Dr. Thomas Report at 12.) "A 'winged' scapula is brought about by a compromise of the long thoracic nerve whose trunks arise from the cervical vertebrae. This

nerve has importance in respiratory movements." (Dr. Thomas Report at 10.) Dr. Thomas explained that "[w]hen Mr. Bugh developed a RIGHT wing scapula it should have become obvious that there was some cervical impingement on the right side of his spinal column as well as the known issues on the left." (Emphasis sic.) (Dr. Thomas Report at 12-13.)

{¶ 29} Dr. Thomas notes a January 25, 2012 report from a neurologist, in which Bugh's "left hemi-diaphragmatic paralysis is noted" and additionally that Bugh "is starting to develop a RIGHT hemi-diaphragmatic paralysis." (Emphasis sic.) (Dr. Thomas Report at 13.) Dr. Thomas observes that "[i]n spite of this nothing definitive is done by [Bugh's] primary prison providers other than a note in the record that on July 26, 2012 this is acknowledged, but * * * there is nothing in the record that indicates any of his providers are considering progressive spinal compression as an etiology." (Dr. Thomas Report at 13.)

{¶ 30} Thus, the "development of the left diaphragmatic hemi-paralysis, the 'winged' scapula on the right and the eventual right sided diaphragmatic paralysis continually point to a generalized slow neck compression which is never considered by any of [Bugh's] providers." (Dr. Thomas Report at 11.) Again, Dr. Thomas opined that "[i]f by 2011 or 2012 [Bugh] had been offered a laminectomy and discectomy he more likely than not would not be a respiratory cripple today." (Dr. Thomas Report at 11.)

{¶ 31} Dr. Thomas' report, viewed in a light most favorable to Bugh, demonstrates that Bugh remained a candidate for spinal decompression surgery involving laminectomy and discectomy through 2012. Dr. Thomas' report also indicates that, on July 26, 2012, Bugh's ODRC medical providers reviewed a neurological report which noted that Bugh had started to develop right hemi-diaphragmatic paralysis in addition to his already present left hemi-diaphragmatic paralysis and winged scapula on the right. Thus, as of July 26, 2012, Bugh's ODRC medical providers should have considered spinal compression as an etiology, and both should have and could have offered Bugh spinal decompression surgery at that time. Had ODRC taken these actions, Bugh would not be respiratorily disabled today.

{¶ 32} Accordingly, reviewing the Civ.R. 56(C) evidence, and construing that evidence in a light most favorable to Bugh, the last culpable act or omission by ODRC occurred July 26, 2012. Because Bugh's May 4, 2016 complaint was filed within four years of the last culpable act or omission committed by ODRC, Bugh's action against ODRC was not barred by R.C. 2305.113(C).

{¶ 33} Based on the foregoing, Bugh's first assignment of error is sustained. Our ruling on Bugh's first assignment of error renders his second assignment of error moot.

{¶ 34} Having sustained Bugh's first assignment of error, rendering Bugh's second assignment of error moot, we reverse the judgment of the Court of Claims of Ohio and remand the case to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed and cause remanded.*

BRUNNER, J., concurs.
TYACK, J., dissents.

TYACK, J., dissenting.

{¶ 35} I personally believe that the statute of limitations had lapsed because the claim for professional negligence accrued over one year before the filing of this lawsuit. As a result, I believe the trial court was correct. I would overrule the two assignments of error. Since the majority of this panel reaches a different conclusion, I respectfully dissent.

_____