[Cite as *Skaggs v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-2405.]

| | |
|---|---|
| JASON SKAGGS | Case No. 2019-00650JD |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brought this action seeking to recover damages from defendant arising out of an incident where force was used on him. Plaintiff also seeks damages from defendant arising from changes made to his prescription medication regimen. The case proceeded to trial on the issues of liability and damages.

{¶2} At trial, plaintiff, an inmate in the custody and control of defendant, testified that prior to entering prison in 2008, he was placed on seizure medication in 2003 and has continued to take seizure medication since that time. Plaintiff stated that he suffers from grand mal seizures, complex partial seizures, and stare seizures. Plaintiff explained that when he has a seizure, he often loses control of his bodily movements and that he is unable to recall events that occurred while was suffering from his seizure. Plaintiff stated that with the aid of his medications, Topamax and Keppra, his seizures have been controlled.

{¶3} Plaintiff explained that he was transferred to the London Correctional Institution in January 2016 and began to have problems with seizures shortly thereafter. Plaintiff stated that at some point defendant's medical staff discontinued his seizure mediation. The decision to remove plaintiff from Topamax occurred on February 5, 2016, and the decision to remove plaintiff from Keppra occurred on February 9, 2016. Plaintiff's Exhibit 1. Plaintiff was gradually weened off both mediations over the next couple of months. Plaintiff testified that he began to experience frequent seizures that

were witnessed by staff and other prison employees. Plaintiff believes that the medications should never have been discontinued and that by removing him from his medications, he began to have frequent seizures. Plaintiff stated that it appeared to him that defendant did not believe that his seizures were real.

{¶4} Plaintiff described several incidents where he received conduct reports for his actions while he was having a seizure. Plaintiff emphasized that he has no ability to control his actions when he is having a seizure. Plaintiff testified that on April 27, 2016, he suffered a seizure, and he was unable to respond to corrections officer's orders, unable to control himself, became aggressive, and grabbed the arm of the corrections officer. In a second incident on July 3, 2016, corrections officer Baker was escorting plaintiff when plaintiff became "dead weight" and was taken to the floor. In a third incident on July 28, 2016, corrections officers Sexton and Mets found plaintiff lying down and shaking. At some point plaintiff attempted to grab Sexton by the right arm. The corrections officers grabbed plaintiff by the shoulders, placed him on the wall, attempted to place handcuffs on him, and ordered him to comply. When plaintiff failed to comply, corrections officers deployed pepper spray. Plaintiff continued to become more aggressive until officers gained control of him. At some point plaintiff was placed in the hole (restrictive housing) with handcuffs on that plaintiff says were too tight. Plaintiff testified that his wrists were damaged by the handcuffs.

{¶5} Plaintiff testified that in October 2016, his diagnosis was confirmed and defendant prescribed Depakote and Keppra. Plaintiff believes he should have been prescribed Topamax. Plaintiff acknowledged that he was never denied seizure medication and was continually provided medications; however, plaintiff believes he should have never had Topamax and Keppra removed from his prescription plan. Plaintiff also stated that Disability Rights Ohio became involved in his case and his conduct reports were amended to show that he was not breaking prison rules but that

he was suffering from medical issues.  Plaintiff added that he is currently on Keppra and Topamax.

{¶6} Landon Khols, the health care administrator at the Allen-Oakwood Correctional Institution, testified that plaintiff is on the healthcare load for defendant. Khols examined a list of prescription mediations that plaintiff has been prescribed since 2017 and noted that dating back to March 2017 plaintiff has been consistently provided with various combinations of seizure medications, including Divalproex (Depakote), Levetiracetam (Keppra), and Carbamazepine.  No other witnesses testified.

{¶7} Defendant argues that the statute of limitations bars plaintiff's claims. R.C. 2743.16(A) provides, in pertinent part as follows: "[C]ivil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties."  "Generally, a cause of action accrues at the time the wrongful action is committed."  *McDougald v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 20AP-218, 2020-Ohio-6697, ¶ 8, quoting *Union Savs. Bank v. Lawyers Title Ins. Co.*, 10th Dist. No. 10AP-226, 2010-Ohio-6396, ¶ 25.

{¶8} Plaintiff claims injuries arising from at least one of the 2016-incidents, in which force was used on him while he was suffering from a seizure.  Plaintiff stated that his wrists were damaged because the handcuffs were too tight.  However, plaintiff did not file this action until May 23, 2019.  Accordingly, the statute of limitations bars any recovery arising out of the force that was used on him.

{¶9} Defendant argues that plaintiff's medical negligence claims are barred by the one-year statute of limitations for such claims, R.C. 2305.113(A) ("Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.").

{¶10} "A statute of limitations begins to run when the cause of action accrues." *Bugh v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-112, 128 N.E.3d 906, ¶ 16 (10th Dist.), citing R.C. 2305.113(A). "A cause of action for a medical malpractice claim accrues '(a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later.'" *Baker v. Scheetz*, 10th Dist. Franklin No. 18AP-655, 2019-Ohio-685, ¶ 7, quoting *Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987), paragraph one of the syllabus. "In determining when a patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury, courts look to the occurrence of a 'cognizable event' as the trigger for the commencement of the statute of limitations." *George v. Univ. of Toledo Med. Ctr.*, 10th Dist. Franklin No. 17AP-559, 2018-Ohio-719, ¶ 13. "A 'cognizable event' is defined as 'some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place.'" *Hans v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 07AP-10, 2007-Ohio-3294, ¶ 10, quoting *Allenius v. Thomas*, 42 Ohio St.3d 131, 134, 538 N.E.2d 93 (1989). "Thus, if a patient believes, because of harm she has suffered, that her treating medical professional has done something wrong, such a fact is sufficient to alert a plaintiff to the necessity for investigation and pursuit of her remedies." *Id.*

{¶11} Plaintiff challenges the February 2016 decision of the medical staff to adjust his seizure medication. Plaintiff believes that Topamax and Keppra should have always been his prescription medication and that it was a mistake to alter his medications. However, plaintiff filed this action on May 23, 2019, well beyond the time limitation for bringing such actions. Even applying the two-year statute of limitations in R.C. 2743.16(A), plaintiff's claim would likewise be time-barred.

{¶12} However, even if plaintiff had timely filed his claim challenging the decision to adjust his seizure medication, plaintiff did not present any expert testimony to support

such a claim. The negligence plaintiff describes arose in the course of medical diagnosis, care, or treatment, and is thus a claim for medical malpractice. Whether defendant was negligent in its management of plaintiff's prescription regimen is uniquely within the purview of a medical expert and outside the general knowledge of a layperson. Medical skill and judgment are necessary to determine the proper course of treatment and the appropriate prescription medications. *See Evans v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 16AP-767, 2018-Ohio-1035, ¶ 35.

{¶13} "[A]n inmate is under no different burden than any other plaintiff in a medical malpractice claim." *Nicely v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-187, 2009-Ohio-4386, ¶ 9. "In order to establish medical malpractice, plaintiff must demonstrate by the preponderance of the evidence that the injury complained of was caused by a practice that a physician of ordinary skill, care or diligence, would not have employed, and that plaintiff's injury was the direct and proximate result of such practice." *Schmidt v. Univ. of Cincinnati Med. Ctr.*, 117 Ohio App.3d 427, 430, 690 N.E.2d 946 (10th Dist.1997), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976), paragraph one of the syllabus. "The *Bruni* standard applies to an inmate's claim for medical malpractice." *Gordon v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1058, 2011-Ohio-5057, ¶ 67.

{¶14} It is well-settled that, in order to prove a claim for medical malpractice, "[e]xpert testimony is required to establish the standard of care and to demonstrate the defendant's alleged failure to conform to that standard." *Reeves v. Healy*, 192 Ohio App.3d 769, 950 N.E.2d 605, 2011-Ohio-1487, ¶ 38 (10th Dist.), citing *Bruni* at 130-131. "Failure to provide expert testimony establishing the recognized standards of care in the medical specialty community is fatal to the presentation of a prima facie case of medical [malpractice]." *Gibson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No.19AP-379, 2019-Ohio-4955, ¶ 10 (citations omitted).

{¶15} As stated previously, plaintiff failed to present any expert witness testimony to establish the standard of care or that a breach of that standard proximately caused him harm. Without expert testimony to establish the standard of care, defendant's breach of that standard, and proximate cause of any injuries, plaintiff cannot prevail on his claim for medical malpractice. *Gibson* at ¶ 10; *see Hernandez v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-37, 2017-Ohio-8646, ¶ 13-14 (inmate required produce an expert report addressing the standard of care, breach of that standard, and proximate cause of injuries to create a genuine issue of material fact); *Sanchez v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 18AP-765, 2019-Ohio-2534, ¶ 26-28 (inmate required to support his claim of medical malpractice with expert testimony). In short, plaintiff's claim for medical malpractice must fail.

{¶16} Based upon the foregoing, the magistrate recommends that judgment be entered in favor of defendant.

{¶17} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

GARY PETERSON
Magistrate

**Filed May 26, 2021**
**Sent to S.C. Reporter 7/14/21**